UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Criminal No. 3:09cr265 (JBA) |
|---|---|
| v. | October 11, 2019 |
| CLAYTON BENJAMIN | |

**ORDER GRANTING DEFENDANT'S MOTION FOR RELIEF UNDER FIRST STEP ACT**

Defendant Clayton Benjamin moves for "immediate release, or in the alternative, to schedule a resentencing hearing, pursuant to the First Step Act of 2018" ("FSA"). (Mot. for FSA Relief [Doc. # 391].) The Government opposes. ([Doc. # 394].)

In summary, the Court concludes that Defendant was convicted of violating 21 U.S.C. § 841(b)(1)(B), and because the Fair Sentencing Act of 2010 modified the statutory penalty for violations of that statute, Mr. Benjamin committed a "covered offense" and is eligible for relief under the FSA. While the parties debate the availability of a "plenary" resentencing proceeding, even in a limited resentencing, the Court must use the 2018 Guidelines Manual to calculate the advisory range currently applicable to Defendant in order to exercise discretion in determining what reduction in sentence, if any, he should be granted. That determination necessarily requires calculation of Defendant's total offense level, which depends in part upon whether he is subject to the career offender enhancement of § 4B1.1. Because Defendant's prior convictions under Conn. Gen. Stat. § 21a-277(a) do not qualify as "controlled substance offenses" for purposes of the Guidelines' career offender enhancement, and in keeping with the purpose of the Second Circuit's "one book rule" and to avoid perpetuating an incorrect interpretation of the Sentencing Guidelines, Defendant's advisory guidelines range under the 2018 Guidelines Manual and its

interpretation by the courts does not include the Guidelines' career offender enhancement. Because he has now been incarcerated far longer than any non-career offender Guidelines range applicable to his conduct and count of conviction, regardless of whether that range is calculated using cocaine base or powder cocaine, Defendant's previously imposed sentence of 188 months' imprisonment on Count One of the Indictment is reduced to time served.

## I. Background

In March 2010, Defendant pleaded guilty to Count One of the Indictment, which charged him with conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Plea Agreement [Doc. # 130] at 1; Indictment [Doc. # 1] at ¶¶ 1, 3.) Before Defendant entered that plea, the Government filed a notice of Defendant's prior convictions pursuant to 21 U.S.C. § 851. (Notice Charging Prior Offense [Doc. # 114].) That Notice cited five prior convictions for violations of Connecticut drug laws: four convictions for Sale of Narcotics, in violation of Conn. Gen. Stat. § 21a-277(a), and one conviction for Possession of Narcotics, in violation of Conn. Gen. Stat. § 21a-279(a). (*Id.* at 1-2.) "Therefore, the offense charged in Count One of the Indictment carrie[d] a mandatory minimum penalty of ten years' imprisonment, a maximum penalty of life imprisonment . . . [and] a term of supervised release of at least eight years and as much as life." (Plea Agreement at 2.)

Defendant "agree[d] and acknowledge[d] that the quantity involved of the mixture and substance containing a detectable amount of cocaine base was in excess of 35 grams, but not more than 50 grams." (Plea Agreement at 3.) In the Plea Agreement, Defendant and the Government "agree[d] that . . . the defendant's base level offense would be 28" based on the quantity of cocaine base at issue, resulting in a "total offense level of 25" based on Defendant's acceptance of responsibility. (*Id.* at 4.) The parties also "agree[d] that the defendant falls within Criminal History

2

Category VI." (*Id.*) An offense level of 25 with a Criminal History Category VI produced an advisory Sentencing Guidelines range of 110 to 137 months of imprisonment, but the bottom of that range was increased to 120 months based on the applicable mandatory minimum term of imprisonment of ten years. (*Id.*)

The Plea Agreement also noted that "[i]t also appears, however, that the defendant may qualify as a career offender, pursuant to § 4B1.1(a) of the Sentencing Guidelines." (*Id.*) If Defendant "does qualify as a Career Offender," his total offense level would be 34. (*Id.*) Combined with a Criminal History Category VI, that offense level produced a Sentencing Guidelines range of 262 to 327 months of imprisonment. (*Id.*)

Defendant was sentenced to a term of imprisonment of 188 months and an eight-year term of supervised release. (Judgment [Doc. # 229].) He was sentenced "using the November '09 guidelines." (Tr. of Sentencing Hearing [Doc. # 243] at 5:9-10.) The 188-month sentence was "a departure under U.S.S.G. § 5K2.0" based on "the absence of empirical basis for the crack-powder cocaine guideline range disparity, as set out in *Kimbrough v. United States* . . . ." (Judgment.) The Court found that "a departure reflecting a 1:1 ratio is warranted and consistent with 18 U.S.C. § 3553(b)." (*Id.*) The sentence of 188 months' imprisonment fell within what would have been the applicable career offender Guidelines range of 188 to 235 months "[w]ere [Defendant] charged with powder or were crack and powder treated equally." (Tr. of Sentencing Hr. at 7:17-19.) At sentencing, the Court noted that "the record . . . lacks, other than the plumber's apprentice program" of which Defendant had then completed approximately 1,700 of the required 8,000 hours, "a serious effort to change course." (*Id.* at 36:24-37:1.) The Court determined that Mr. Benjamin's "risk of recidivism" was "high" or "virtually certain unless there is some major life change which overcomes" his prior challenges. (*Id.* at 37:14-18.) The Court concluded that a

3

"significant period of incarceration is needed to provide the education or vocational training that will produce a person who comes out with a whole other set of skills and a whole commitment to using those skills in a law-abiding and productive way." (*Id.* at 38:4-9.) The Court described Mr. Benjamin's sentence as long enough to "give[] you a chance to complete a full apprenticeship, to have a full set of tools with which you can go out and get a real job that pays real money so you can be a real law-abiding citizen." (*Id.* at 41:3-6.)

Mr. Benjamin has now served approximately 120 months of his 188-month sentence. Defendant's counsel represents that during that time, Defendant has completed the 8,000-hour plumbing apprenticeship program. (Mem. Supp. FSA Mot. [Doc. # 393] at 9.) The "Bureau of Prisons has been unable to confirm that Mr. Benjamin participated or completed in the apprenticeship program, although a BOP employee wrote in an email to Mr. Benjamin's BOP counsellor, 'I do remember Inmate Benjamin being part of the plumbing apprenticeship program.'" (Reply Supp. FSA Mot. [Doc. # 395] at 12.) During the current period of incarceration, Mr. Benjamin has worked for approximately 54 months as a plumber at FCI Gilmer. (Ex. C (Work Detail) to Reply [Doc. # 395-3].)

II. Discussion

A. Eligibility for Relief Under the First Step Act

Section 404 of the First Step Act of 2018 limits relief under that Act to defendants who committed a "covered offense," which "means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2371), that was committed before August 3, 2010." First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 2 of the Fair Sentencing Act of 2010 modified the statutory penalty for violations of 21 U.S.C. § 841(b)(1)(B), under which Mr.

4

Benjamin was convicted in this case. *See* Pub L. No. 111-220, 124 Stat. 2371 (2010). "Section 841(b)(1)(B)(iii) now provides for a sentencing range of 5 to 40 years if the offense involved '28 grams or more' but less than 280 grams of crack cocaine." (Mem. Supp. FSA Mot. at 11.)

The Government argues nonetheless that Defendant is "statutorily ineligible for a sentencing reduction under Section 404 of the First Step Act" because his violation "is not a 'covered offense' under the First Step Act" given that his "sentencing exposure under the First Step Act is identical to what he faced at the time of his original sentencing, based on the quantity of drugs involved in his violation." (Gov't Opp. to FSA Mot. [Doc. # 394] at 1.) The Government's argument is based on its interpretation of "violation" in the FSA's definition of "covered offense" as referring "more broadly to the actual offense conduct, to the extent that can be discerned from the record." (*Id.* at 7.) Defendant argues that "violation" refers specifically to "the statutory provision [the defendant] pled guilty to (not the drug quantity determined by the Court at sentencing or stipulated to by the parties in a plea agreement)." (Mem. Supp. FSA Mot. at 12.)

A "growing number of courts have concluded [that] 'it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act.'" *United States v. Allen*, 384 F. Supp. 3d 238, 241 (D. Conn. 2019) (quoting *United States v. Martin*, 2019 WL 1556617, at *3 (E.D.N.Y. Apr. 10, 2019)); *see, e.g.*, *United States v. Davis*, 2019 WL 1054554, at *3 (W.D.N.Y. Mar. 6, 2019) ("Under the plain language of the [FSA], whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated," not by the offense conduct.).[1] And "[t]o the extent the statutory text is ambiguous, the ambiguity is dispelled by considering the

---

[1] The Government concedes that although "some decisions" have "adopt[ed] the government's view" of eligibility for relief, "a presently greater number of decisions" have adopted Defendant's view of eligibility. (Gov't Opp. at 8.)

5

purpose underlying the First Step Act," "further[ing] the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact." *Allen*, 384 F. Supp. 3d at 242 (citation omitted). "Given this remedial purpose, the First Step Act should be construed to provide courts with discretion to reduce a sentence when the statute the defendant violated has been modified by the Fair Sentencing Act to provide less severe penalties." *Id.* (citation omitted). This Court agrees with the majority of district courts to consider this issue and concludes that "violation" in the First Step Act's definition of a "covered offense" refers to the statute under which a defendant was convicted, not to "the actual offense conduct, to the extent that can be discerned from the record," as the Government argued.

"Using the drug quantity noted in the count of conviction," not the offense conduct, "had Section 2 of the Fair Sentencing Act of 2010 been in effect when Mr. Benjamin was originally sentenced, the statutory penalties would have been . . .[,] [i]n light of the filing of the 851 motion, . . . a maximum of 30 years' imprisonment (with no mandatory minimum) and a supervised release term of 6 years to life." (FSA Addendum to PSR [Doc. # 392] at 2.) In contrast, the "penalties Mr. Benjamin faced at [his original] sentencing . . . included a mandatory minimum of 10 years to life imprisonment, [and] 8 years to life supervised release." (*Id.* at 1.) Because Mr. Benjamin was convicted of violating 21 U.S.C. § 841(b)(1)(B), and because the Fair Sentencing Act of 2010 modified the statutory penalty for violations of that statute, Mr. Benjamin committed a "covered offense" and is eligible for relief under the First Step Act.

### B. Relief Under the First Step Act

Because Mr. Benjamin is eligible for relief under the First Step Act, the Court must determine what relief, if any, he shall be granted. For "covered offenses," the First Step Act authorizes courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act

6

of 2010 . . . were in effect at the time the covered offense was committed." Defendant argues that this language in the FSA authorizes a plenary resentencing, while the Government contends that it authorizes "only a limited adjustment to an otherwise final sentence." (Gov't Opp. at 16.)

Defendant seeks a plenary resentencing for the Court to "apply current law," including changes to the "definition and application of career offender status" under the Sentencing Guidelines.[2] (Mem. Supp. FSA Mot. at 18.) Specifically, Mr. Benjamin argues that at a plenary resentencing, he should not be subjected to the Guidelines' career offender enhancement "because his prior Connecticut drug convictions are not 'controlled substance offenses' within the meaning of U.S.S.G. § 4B1.2" as interpreted by cases decided after his original sentencing. (*Id.*) The Court has carefully considered the parties' analyses of whether a plenary resentencing hearing is permissible under the First Step Act. However, the Court concludes that under the circumstances of this case, appropriate relief can be granted without weighing in on this difficult issue that has divided the courts. *See United States v. Napper*, No. 3:09cr250(JBA), 2019 WL 4727500, at *1 (D. Conn. Sep. 27, 2019).

The parties apparently assume that Mr. Benjamin's status as a career offender under the Guidelines necessarily remains unchanged absent a plenary resentencing. But even in a limited resentencing, the Court must calculate the guidelines range applicable to Mr. Benjamin in order to exercise discretion in determining what reduction in sentence, if any, he should be granted under the FSA. To calculate that advisory guideline range, the Court will use the 2018 Sentencing

---

[2] Mr. Benjamin also argues that other "relevant developments" in the law should be considered at a plenary resentencing, including the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and changes in the law regarding which prior convictions support a § 851 Notice. (Mem. Supp. FSA Mot. at 18.) The Court need not address those arguments because it finds that Mr. Benjamin is entitled to a sentence reduction on other grounds.

Guidelines. *See United States v. Rodriguez*, 989 F.2d 583, 587 (2d Cir. 1993) ("A sentencing court must generally apply the version of the Guidelines that is in effect at the time of sentencing, 18 U.S.C. § 3553, unless there is an *ex post facto* problem.") The Government[3] and the United States Probation Office[4] also acknowledge that even in a limited, non-plenary resentencing, the guidelines which apply to the calculation of any sentence reduction under the FSA are the 2018 Guidelines. And under the Second Circuit's "one book rule," "a sentencing court has no authority to pick and choose, taking one provision from an earlier version of the guidelines and another from a later version." *United States v. Ramirez*, 846 F.3d 615, 621 (2017) (internal quotation and modification omitted). "Instead, a version of the sentencing guidelines is to be applied in its entirety." *Id.* (internal quotation and modification omitted). Thus, in "the sentence-reduction context," any "intervening amendments" made to the Guidelines Manual since the defendant's original sentencing must be applied in calculating the reduced sentence. *Id.* The *Ramirez* reasoning suggests that like "intervening amendments" to the Guidelines, intervening case law which interprets the text of the Guidelines should be applied in considering any reduced sentence.

---

[3] "Additionally, a calculation of Mr. Benjamin's current Guidelines range under the 2018 Guidelines Manual objectively establishes that he has already benefited from the principles underlying the First Step Act. . . . Thus, the defendant's 188-month sentence is below the new, amended guideline range, should not be further reduced, and in fact matches the Probation Office's calculations in its PSR addendum . . . Therefore, assuming without conceding that the defendant's conviction is an offense covered by the First Step Act, the Probation Office's calculations demonstrate that the defendant's 2010 sentence of 188 months is still reflective of the reduced periods of incarceration contemplated by the First Step Act." (Gov't Opp. at 24-25.)

[4] "Under the November 1, 2018 Sentencing Guideline Manual, in calculating the currently applicable advisory guideline range, Mr. Benjamin's base offense level would be . . . ." (FSA Addendum to PSR at 3.)

In *United States v. Stone*, 2019 WL 2475750, at *2 (N.D. Ohio June 13, 2019), the Government suggested otherwise. It argued that because the proceeding was "not a plenary re-sentencing, . . . the Court should, therefore, consider the changes that may have been affected by the applicable sections of the Fair Sentencing Act, but should view those changes as if they were being applied on the date of the original sentencing, and not with the benefit of any other legislative or constitutional developments that may have occurred since that time," including the constitutional rule set out in *Apprendi*, which would impact Mr. Stone's sentencing range. *Id.* But the court rejected that argument, concluding that the "First Step Act neither directs nor implies that the Court should perpetuate the application of an unconstitutional practice when determining a new sentence that complies with the Act's directives, and many courts faced with the issue have applied the *Apprendi* rule in First Step Act re-sentencings." *Id.* (citing cases).

The Government takes a similar position here: that absent a plenary resentencing, developments in the case law interpreting the language of the 2018 Guidelines' career offender enhancement cannot be considered, and instead the Court should resentence Mr. Benjamin without the benefit of any legal developments that may have occurred since the time of his original sentencing. (*See* Gov't Opp. at 18.) But the Court declines to "perpetuate the application" of an incorrect interpretation of the Guidelines "when determining a new sentence that complies with the [FSA's] directives." *Stone*, 2019 WL 2475750, at *2. Moreover, the Government's position is at odds with its own acknowledgement that the 2018 Guidelines, which were not in effect at the time of Mr. Benjamin's original sentencing, apply now to even a limited resentencing. (*See* Gov't Opp. at 24-25.) The Government's position is also at odds with its argument that in determining whether to "exercise its discretion" to grant relief under the FSA, "the Court should consider the defendant's *post-offense conduct*," including his "activity during his term of imprisonment," (*id.* at 23, 26

9

(emphasis added)), which conduct clearly could not be considered if the Court were to resentence Mr. Benjamin as if the applicable sections of the Fair Sentencing Act were being applied on the date of his original sentencing.

Finally, "[t]o calculate the applicable Guidelines range, the Court must first determine the offense level and criminal history" under the Sentencing Guidelines, which "requires only a review of the information contained in the presentence report and a mechanical modification based on application of the Guidelines. Such examination does not require a *de novo* resentencing with [the defendant's] presence or a relitigation of whether his prior offenses qualify as career offender predicates." *United States v. Black*, 388 F. Supp. 3d 682, 690 (E.D. Va. 2019).

Thus even in a limited resentencing, in keeping with the purpose of the "one book rule" and to avoid perpetuating an incorrect interpretation of the Sentencing Guidelines, Mr. Benjamin's advisory guidelines range will be calculated using the 2018 Guidelines Manual and its interpretation by the courts, even where that interpretation occurred after the date of Mr. Benjamin's original sentencing.

In identifying the Guidelines range currently applicable to Mr. Benjamin, the Court must determine whether Mr. Benjamin presently is subject to the Guidelines' career offender enhancement. U.S.S.G. § 4B1.1(a) makes clear that a defendant only qualifies for a career offender enhancement where he has "two prior felony convictions of either a crime of violence or a controlled substance offense." But Mr. Benjamin has no prior felony convictions for a crime of violence, and his four prior convictions for Sale of Narcotics, in violation of Conn. Gen. Stat. § 21a-277(a), do not count as "controlled substance offense[s]" for purposes of the career offender enhancement under *United States v. Epps*, 322 F. Supp. 3d 299, 303-07 (D. Conn. 2018). In *Epps*, this Court held that "prior convictions under [Conn. Gen. Stat.] 21a-277(a) are not 'controlled

substance offenses' under U.S.S.G. 2K2.1," *id.*, which "adopts the definition of a 'controlled substance offense' in § 4B1.2(b)," *United States v. Townsend*, 897 F.3d 66, 69 (2d Cir. 2018). Therefore Mr. Benjamin does not have the requisite "two prior felony convictions of either a crime of violence or a controlled substance offense," and he is not subject to the Guidelines' career offender enhancement.

In the FSA Addendum to Mr. Benjamin's Presentence Report, the United States Probation Office calculated Mr. Benjamin's currently applicable advisory guideline range. Without the career offender designation, Mr. Benjamin's current base offense level is 24 pursuant to USSG § 2D1.1(c)(8) because the offense involved at least 28 grams but less than 112 grams of cocaine base. (FSA Addendum to PSR at 3; *see* Plea Agreement (agreeing that "the quantity involved of the mixture and substance containing a detectable amount of cocaine base was in excess of 35 grams, but not more than 50 grams).) But at Mr. Benjamin's original sentencing, the Court departed from the applicable Guidelines range to effect a 1:1 ratio between crack and powder cocaine. If his offense had involved powder cocaine, Mr. Benjamin's current base offense level would be 12, which applies to offenses involving "[l]ess than 50 G of Cocaine." U.S.S.G. § 2D1.1(c)(14). After reductions for acceptance of responsibility, the total offense level would be 21 under the cocaine base calculation or 10 under the powder cocaine calculation. (*See* FSA Addendum to PSR at 3; U.S.S.G. § 3E1.1(b).) "Mr. Benjamin would remain in criminal history Category VI . . . . by virtue of . . . his criminal history points," even without the career offender designation. (*Id.*) A total offense level of 21 (for cocaine base) with a criminal history Category VI produces a guidelines range of 77 to 96 months' imprisonment. A total offense level of 10 (for powder cocaine) with a criminal history Category VI produces a guidelines range of 24 to 30 months' imprisonment.

11

Mr. Benjamin has now been incarcerated by the Bureau of Prisons for approximately 120 months. Pursuant to the FSA, he is no longer subject to the ten-year mandatory minimum which applied at his original sentencing but rather faces a statutory penalty of "a maximum of 30 years' imprisonment (with no mandatory minimum) and a supervised release term of 6 years to life," driven by the "the drug quantity noted in the count of conviction" and the Government's § 851 motion. (FSA Addendum to PSR at 2.) He has been incarcerated far longer than any non-career offender Guidelines range applicable to his conduct and count of conviction, regardless of whether that range is calculated using cocaine base or powder cocaine. And as demonstrated by the significant time he spent working as a plumber at FCI Gilmer, Mr. Benjamin's sentence may have already served its stated purpose "to provide the education or vocational training that will produce a person who comes out with a whole other set of skills." (Tr. of Sentencing Hr. at 38:4-9.)

### III. Conclusion

For the foregoing reasons, Mr. Benjamin's Motion for relief under the First Step Act [Doc. # 391] is GRANTED and the Defendant's previously imposed sentence of imprisonment of 188 months is reduced to time served on Count One of the Indictment. The Defendant's term of supervised release of 96 months is reduced to 72 months. Except as otherwise provided, all provisions of the judgment dated July 8, 2010 shall remain in effect.

IT IS SO ORDERED,

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of October 2019.